IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00300-CMA-MJW

ALONZO BUGGS,

Plaintiff(s),

v.

CAROL TRUJILLO, Case Manager II, and
RAE TIMME, Warden; Colorado Territorial Correctional Facility,

Defendant(s).

---

**RECOMMENDATION ON
MOTION TO DISMISS (Docket No. 15)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to the undersigned by an Order Referring Case entered by Judge Christine M. Arguello on March 15, 2013. (Docket No. 13).

**PLAINTIFF'S ALLEGATIONS**

The operative pleading is the pro se incarcerated plaintiff's First Amended Complaint (Docket No. 6), brought pursuant to 42 U.S.C. § 1983, in which the following is alleged.

In the early 2000s, the policy of the lieutenant in cell house 3 at Colorado Territorial Correctional Facility ("CTCF") was that all "ADL/OCA" workers had to work seven days a week but get paid for only five days, under the threat of complying or being fired. Plaintiff worked under these conditions as an Assisted Daily Living assistant ("ADL"), taking care of inmates, mostly in wheelchairs. At an unspecified time when

2

plaintiff became sick requiring surgery, he could no longer work pushing wheelchairs and had to change jobs. In around 2008-09, the facility decided to change the title ADL to OCA, and plaintiff became an OCA. At some unspecified time, plaintiff took another job in recreation in the gym. Because of his proximity in this new job, plaintiff was included with inmates who were involved in the introduction of contraband into the facility, and even though he was not written up, he was fired and sent to Colorado State Penitentiary.

In around March 2012, inmates filed grievances concerning pay and back pay for OCAs in cell house 3, asserting that the compensation should cover every day from the start of work by each individual inmate until the present. A general response to these grievances was published on April 11, 2012, with an attempted resolution of a deposit of a mere $50 in the account of each OCA. The response stated that no other grievances would be received for a period of six months. Despite that response, some OCAs filed further grievances because the $50 forced upon them did not begin to compensate for the unpaid days. The answer to their step 2 grievances was that the prison had no evidence of OCAs working seven days a week, that the inmates had 30 days to file per administrative regulation 850-04, and that since their claims went back for years, they were not allowed or exhausted. On or about August 10, 2012, defendant Warden Rae Timme sent out an "Acceptance of Settlement Offer."

Upon learning the above information, plaintiff requested his back pay as an ADL/OCA for at least the years 2007 to 2009. Defendant Case Manager Carol Trujillo responded, stating that the OCA back pay was for inmates "who were assigned as Offender Care Aides in CH-3 and the infirmary. There is no back pay for any other title

or offender who worked in CH-1 or CH-7." Trujillo purposely misstated that plaintiff worked in CH-1 and CH-7; plaintiff's work history clearly showed that plaintiff worked and was housed in CH-3.[1] Plaintiff filed a Step 1 grievance, stating he was in CH-3 working 7 days a week and only being paid for 5 days. The Step 1 grievance was denied by Trujillo, who stated that the OCA back pay was for OCAs because it was an agreement through Montez, and ADLs were not included. She further stated that the "offenders who were ADL's received back pay, then it was error and may be reviewed to have the money taken back."[2] Plaintiff filed a Step 2 grievance, which was denied by

---

[1]Attached to the First Amended Complaint is a copy of the memorandum from Trujillo, dated October 3, 2012, in which she states:

> In response to your request for OCA Back Pay, I reviewed your work history and noted that **you were assigned as a Clinical Inmate Assistant and/or an ADL (Assisted Daily Living) Assistant**.
>
> **The OCA back pay is only for offenders who were assigned as Offender Care Aides** in CH-3 and the infirmary. **There is no back pay for any other title** or offender who worked in CH-1 or CH-7.
>
> If you feel you are owed any back pay, then you need to get with your work supervisor and prove that you worked the extra days. They can sign a Pay Correction form and turn it in to me for review.
>
> Thank you.

(Docket No. 6 at 10) (emphasis in bold added).

[2]Attached to the First Amended Complaint is the Step 1 Grievance and Response. The response states:

> In response to your grievance the OCA back pay is for OCA's because it is an agreement through the Montez Settlement. OCA titles were created from Montez. ADLs and Clinical Assistants were not. In addition, the training for those assignments havechanged [sic] drastically over the years. If offender's [sic] who were ADL's received back pay, then it was in error and may be reviewed to have the money taken back. Again, if you

4

Major Miklich, who stated Trujillo was correct in her assessment of the issue because of some agreement through Montez. He repeated that ADLs were not included in the settlement, and the duties were not the same. He further repeated that the ADLs who received back pay based on the concerns of the current OCA scheduling was error and may be reviewed. Plaintiff then filed a Step 3 grievance, which was denied by Step 3 Grievance Officer Anthony A. DeCesaro, who stated that plaintiff did not exhaust his administrative remedies because he filed out of time.

According to plaintiff, everyone in his position who applied for back pay received back pay, but plaintiff was singled out for disparate treatment and denied due process and equal protection. In addition, the defendants and staff tried to intimidate the OCA/ADLs who received back pay by stating they would take back the money that had been given. Prior to the Step 1 answer, plaintiff had the other inmates who received back pay ready to act as witnesses, but after the answer, there were just a few who were willing to be witnesses.

Based on the above, plaintiff raises one claim for relief, namely, a violation of the Fourteenth Amendment based upon due process and equal protection violations. He seeks declaratory, injunctive, and monetary relief.

**DEFENDANTS' MOTION TO DISMISS**

Now before the court for a report and recommendation is the Defendants' Motion

---

feel you deserve back pay for any assignment other than an OCA, then
you need to prove you worked those hours and a correction sheet can be
considered.

(Docket No. 6 at 11).

to Dismiss (Docket No. 15) in which defendants seek dismissal of the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds: (1) plaintiff's claim is barred by the applicable statute of limitations; (2) defendants are entitled to qualified immunity because plaintiff fails to state a claim or adequately allege any constitutional violation; (3) plaintiff's claim is barred by the Prison Litigation Reform Act ("PLRA") because there was no physical injury and plaintiff failed to exhaust his administrative remedies; and (4) plaintiff failed to allege facts supporting punitive damages. Plaintiff filed a Response (Docket No. 20), and defendants filed a Reply (Docket No. 21). The court has carefully and thoroughly reviewed the moving papers and has considered applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions of law, and recommendation that the motion to dismiss be granted.

> Rule 12(b)(1):
>
> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United*

6

> *States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974).

7

"[P]lausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] 'ha[s] not nudged [his] claim[] across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). Furthermore, "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." Id. "[T]he Twombly/Iqbal standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662(2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the

pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Statute of Limitations.** Defendants first assert that the plaintiff's claims are barred by the statute of limitations. Plaintiff's § 1983 claims are governed by the two-year statute of limitations contained in § 13-80-102, C.R.S. See Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994). Federal law, rather than state law, determines when a federal claim accrues. The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action. Kripp v. Luton, 466 F.3d 1171, 1175 (10th Cir. 2006); Industrial Constructors Corp. v. United States Bur. of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994). Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when the Complaint indicates on its face that the statute of limitations has expired. See Aldrich v. McCulloch Props. Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Here, the original Complaint was dated January 28, 2013. (Docket No. 1 at 8). Plaintiff states in both his original and his amended pleadings that he was seeking back pay for at least the work done in 2007-2009, and he claims his due process and equal protection rights were violated when his unlike the other ADL/OCAs, his request for back pay was denied. In his Response to defendants' motion, plaintiff says that

> inmates first filed grievances on this issue on or about March 2012, and a general response was published on April 11, 2012, giving offenders $50.00 back pay, issued by Capt. Moroney. Until then, no inmate was

> aware he was due back pay. Furthermore, the grievances stated that the published response **shall** serve as an official response for all similar grievances for a period of six months, so Plaintiff had reason to know on April 11, 2012. Plaintiff could not have found out any sooner that [sic] that date. Plaintiff used reasonable diligence to find out the only way possible. . . . The Acceptance of Settlement Offer was done on or about August 10, 2012, and Plaintiff filed a grievance on that; not being offered to him October 17, 2012, well within the statute of limitations pursuant to §13-1--102. Therefore this case can't be dismissed on those grounds.

(Docket No. 20 at 5).

It appears that the defendants are contending that the constitutional claims asserted in the plaintiff's First Amended Complaint relate to one injury - his failure to receive pay for all of the days he worked back in 2007 to 2009, more specifically, being required to work seven days per week but get paid for only five days, and that plaintiff would have known or had reason to know he was not getting paid for all of the days worked back in 2007-2009 at the time he was not being paid in full. However, "[t]he injury that is the 'basis of action' in a § 1983 claim is the violation of a constitutional right." Romero v. Lander, 461 Fed. Appx. 661, 667 (10th Cir. Feb. 2, 2012), cert. denied, 133 S.Ct. 212 (2012) (citing Smith v. City of Enid, 149 f.3d 1151, 1154 (10th Cir. 1998) ("Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." (quotations and citations omitted))). Here, plaintiff alleges that his due process and equal protection rights were violated when he was treated differently from other inmates whose requests for back pay were granted. Plaintiff asserts that once the Warden posted the Settlement Offer in August 2012, plaintiff went to his case managers, first A. Bell, and then Ms. Trujillo, to request his back pay, and Ms. Trujillo responded in a memo dated October 3, 2012 (a copy of which is attached to the original

Complaint - Docket No. 1 at 9). Plaintiff quotes the text of that memo and states that no other inmate who received back pay was treated like this. It thus appears that plaintiff's constitutional claims accrued at the time he received this October 3, 2012, memo, and thus his constitutional claims are not time-barred.

**Qualified Immunity.** Defendants next assert that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009). It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." Cruz v. City of

11

Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001). The Supreme Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. at 236.

Here, defendants contend that the plaintiff has failed to state a claim or adequately allege any constitutional violation.

Due Process Claim. First, defendants assert that the plaintiff has failed to state a due process claim because he has no liberty interest in back pay for his prison employment, and thus no process is required. This court agrees.

The Fourteenth Amendment states: "No State shall ... deprive any person of life, liberty, or property, without due process of law ." U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). Under either form of protection, however, a person must have a protected interest in either life, liberty, or property. In this case, plaintiff does not have such a protected interest in back pay. "The Constitution does not provide prisoners any substantive entitlement to compensation for their labor." Serra v. Lappin, 600 F.3d 1191, 1196 (9th Cir. 2010) (citing Piatt v. MacDougal, 773 F.2d 1032, 1035 (9th Cir. 1985) (holding that the state does not deprive a prisoner of a constitutionally protected liberty interest by forcing him to work without pay)). "Although the Constitution includes, in the Thirteenth Amendment, a general

prohibition against involuntary servitude, it expressly excepts from that general prohibition forced labor 'as a punishment for crime whereof the party shall have been duly convicted.'" Id. (quoting U.S. Const. amend. XIII, § 1, and citing Piatt, 773 F.2d at 1035). See Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989) ("[t]he Constitution does not create a property or liberty interest in prison employment.") (and cases cited therein); Rochon v. Louisiana State Penitentiary Inmate Account, 880 F.2d 845, 846 (5th Cir. 1989) ("Prisoners have no constitutional right to be paid for work performed in prison); Dumonde v. Lappin, 2010 WL 2197550, at *2 (M.D. Ala. May 7, 2010) (no constitutional right to be paid for work performed in prison). See also Antonelli v. Crow, 2012 WL 4215024, at *16 (E.D. Ky. Sept. 19, 2012) (inmate "has no constitutional right to be paid at all for his work or at a particular rate of pay"); Davis v. Villagrana, 2011 WL 318328, at *3 (E.D. Cal. Feb. 1, 2011) ("The Due Process Clause itself does not confer on Plaintiff a property interest in prison wages, as inmates are not entitled to payment for their labor.").

Plaintiff claims in his Response that he "didn't claim that he had a liberty interest in his job or back pay. Plaintiff stated that he had a property interest in his money which is his pay that has been created by statute §17-20-117 CRS . . . ." (Docket No. 20 at 9). That Colorado statute, however, merely provides: "Every able-bodied inmate shall be put to and kept at the work most suitable to such inmate's capacity and most advantageous to the people of this state. Inmates who work in the department shall not be entitled to any right, benefit, or privilege applicable to employees of the state of Colorado." § 17-20-117, C.R.S. That statute makes no provision regarding pay for an inmate's work. Therefore, plaintiff's claim that this statutory provision creates a

13

protected property interest in his inmate pay is without merit.

This court thus finds that the plaintiff has not met his burden of showing that the defendants' actions violated his due process rights.

Equal Protection Claim. Defendants next assert that plaintiff has failed to state an equal protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. The Fourteenth Amendment's equal protection guarantee "is essentially a directive that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "To state an equal protection claim, a plaintiff must allege: (1) that similarly-situated individuals were treated differently; and (2) either that the differential treatment was based on a suspect classification or fundamental right and not supported by a compelling government interest, or if the differential treatment was not based on a suspect classification or fundamental right, the differential treatment was not justified by a rational connection to a legitimate state interest." Haines v. Archuleta, 2013 WL 6658767, at *5 (D. Colo. Dec. 17, 2013) (citing Kleinsmith v. Shurtleff, 571 F.3d 1033, 1047 (10th Cir. 2009)).

Here, plaintiff states in his Response that he is not alleging that he is a member of a suspect class. (Docket No. 20 at 6). Instead, he contends that he is a "class of one" and that he was treated differently than other prisoners who are or were similarly situated without adequate justification for the difference in treatment. (Docket No. 20 at 6). See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (recognizing the existence of an equal protection claim "where the plaintiff alleges that she has been

intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Class-of-one equal protection claims are viewed with caution since this legal theory could effectively provide a federal cause of action for review of almost every executive and administrative decision. " Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216 (10th Cir. 2011). To avoid that outcome, the Tenth Circuit has imposed a "substantial burden" on plaintiffs to demonstrate that others similarly situated in all material respects were treated differently and that the difference in treatment was without rational basis, that is the government action was "irrational and abusive" and "wholly unrelated to any legitimate state activity." Id. at 1217.

In this case, the court finds that the plaintiff has not met this "substantial burden." The plaintiff has identified another prisoner, Walden Mackey #82262, as an example of another inmate who was similarly-situated and received back pay. Plaintiff even attached to his pleading copies of inmate Mackey's affidavit, grievances, the responses thereto, and his Acceptance of Settlement Memorandum. (See Docket No. 6 at 16-21). Plaintiff also makes the conclusory assertion that everyone in his position who applied for back pay received back pay, but he has not demonstrated that "everyone else" was similarly situated in every material respect but were treated differently. Moreover, plaintiff also attached copies of the responses to his own grievances regarding the back pay issue in which plaintiff was advised that "[i]f any offender's [sic] who were ADL's received back pay based on the concerns of current OCA scheduling, **it was in error and may be reviewed**." (Docket No. 6 at 12) (emphasis added). Based on this information, the court finds that plaintiff has not adequately alleged that defendants' conduct may have been "irrational and abusive and wholly unrelated to any legitimate

state activity." Kansas Penn Gaming, LLC, 656 F.3d at 1216. That "standard is objective-if there is a reasonable justification for the challenged action, [the court] do[es] not inquire into the government actor's actual motivations." Id. (citation omitted). "[D]iscrimination for this purpose occurs when one is 'intentionally treated differently from others similarly situated.'" Del Marcelle v. Brown County Corp., 680 F.3d 887, 914 (7th Cir. 2012). Here, plaintiff's own pleading and exhibits thereto show that defendants' justification was that there if another offender was treated differently, it was an error, not intentional, and could be reviewed. Simply put, plaintiff has failed to set forth allegations that render plausible constitutional violations. The court therefore finds that the plaintiff has not stated an equal protection claim against the defendants.

Based on the findings above, and in the interest of judicial economy, this court has not addressed defendants' other bases for dismissal.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss (Docket No. 15) be **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

16

**(1985), and also waives appellate review of both factual and legal questions.**

**Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley**

**v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: January 13, 2014          s/ Michael J. Watanabe
        Denver, Colorado          Michael J. Watanabe
                                      United States Magistrate Judge